<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel* JANE DOE,<br><br>　　　　　　　　　　　Plaintiffs,<br><br>　　　v.<br><br>HEART SOLUTION PC, BIOSOUND MEDICAL SERVICES, KIRTISH N. PATEL, NITA K. PATEL,<br><br>　　　　　　　　　　　Defendants. | Civil Action No. 14-3644 (SRC)(CLW)<br><br>**OPINION** |

**<u>CHESLER</u>**, District Judge

　　This matter comes before the Court upon two motions: (1) Plaintiff United States of America's ("the Government") motion for partial summary judgment for liability and damages on Counts I and II of its intervenor Complaint, as well as damages [Docket Entry 30]; and Plaintiff/Relator Jane Doe's ("Relator") motion for summary judgment on the Relator's Complaint [Docket Entry 34]. Defendants Heart Solution P.C., Nita K. Patel, Biosound Medical Services, and Kirtish N. Patel (collectively, "Defendants") have opposed the motions [Docket Entries 36-37]. The Court has considered the parties' submissions and proceeds to rule without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court will grant Plaintiffs' motions.

**I.　　BACKGROUND**

　　On November 17, 2015, Defendants Kirtish and Nita Patel pled guilty to separate one-count criminal informations for health care fraud in violation of 18 U.S.C. § 1347. (United

States Rule 56.1 Statement ¶ 1 [hereinafter PSF].)  As part of their plea allocutions, the Patels made the following admissions that are relevant to the motions before the Court.

Kirtish and Nita Patel both admitted that they both owned and operated Biosound Medical Services and Heart Solution P.C. from 2006 to 2014. (K. Patel Tr. at 32:1-5; N. Patel Tr. at 22:12-17.)  Both Patels admitted that Defendants Biosound Medical Services and Heart Solution PC billed Medicare for diagnostic testing services that the Patels claimed had been provided.  (K. Patel Tr. at 32:10-23; N. Patel Tr. at 22:20-23:1.)  Furthermore, both Patels admitted that they claimed that licensed specialist physicians has reviewed and interpreted the diagnostic values recorded by diagnostic technicians as part of the Patels' services.  (K. Patel Tr. at 32:18-23; N. Patel Tr. at 23:2-7.)  During this time period, the Patels knew that doctors who ordered diagnostic services from Defendants relied on the reports they allegedly provided from specialist physicians to make important treatment decisions for their patients with serious conditions.  (K. Patel Tr. at 32:24-33:4, 34:5-9, 34:14-17; N. Patel Tr. at 23:8-13, 24:1-5.)  Both Patels admitted that Kirtish Patel wrote many of the diagnostic reports that were supposed to have been written by a specialist physician, despite the fact that Kirtish Patel did not have a medical license.  (K. Patel Tr. at 33:5-9, 33:14-22; N. Patel Tr. at 23:14-19.)  The Patels further admitted that both Kirtish Patel and Nita Patel attached forged specialist physician signatures to reports that Kirtish Patel forged.  (K. Patel Tr. at 33:23-34:4; N. Patel Tr. at 23:20-25.)  In addition, the Patels admitted that, from 2006 to 2014, that they falsely represented to Medicare that the neurological testing performed at Biosound Medical Services was supervised by licensed neurologists, when it in fact was not. (K. Patel Tr. at 34:4; N. Patel Tr. at 23:8-13.)  The Patels admitted that they made these false representations knowingly.  (K. Patel Tr. at 34:24-35:10; N. Patel Tr. at 24:23-25:1.)  The Patels also admitted that Medicare paid Biosound Medical Services

2

and Heart Solution P.C. at least $1,668,954.95 for claims submitted for diagnostic testing and reports that were never interpreted by a licensed physician, and diagnostic neurological testing that was never supervised by a licensed neurologist. (K. Patel Tr. at 35:11-36:17; N. Patel Tr. at 25:2-16.) The Patels both acknowledged that they knew that submission of these false claims to Medicare was illegal. (K. Patel Tr. at 36:21-37:2; N. Patel Tr. at 25:17-20.) Medicare paid $487,244.95 for diagnostic testing and reports that were not interpreted by a licensed physician, and $1,181,710 for neurological diagnostic testing that was not supervised by a licensed neurologist. (PSF ¶ 11.) Furthermore, the Patels' conduct involved making claims to Medicare for diagnostic testing for at least 200 patients. (*Id.*)

Relator filed the original Complaint in this civil action against Defendants on June 6, 2014 [Docket Entry 1]. The Government filed a notice of election to intervene on November 18, 2015 [Docket Entry 9], along with an intervenor Complaint [Docket Entry 10]. Relator and the Government have filed separate motions for summary judgment [Docket Entries 30, 34] that are now before this Court.[1]

## II.  LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate under Fed. R. Civ. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In considering a motion

---

[1] The Government has not moved for summary judgment on the common law counts it raises in the intervenor Complaint, and thus styles its motion as one for partial summary judgment.

for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

"When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1438 (11th Cir. 1991)). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); *see also* Fed. R. Civ. P. 56(e) (requiring the nonmoving party to "set out specific facts showing a genuine issue for trial"). "A nonmoving party has created a

genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." *Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001).

If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23).

### III. DISCUSSION

Relator moves for summary judgment on her Complaint [Docket Entry 34]. The Government also moves for partial summary judgment on two False Claims Act ("FCA") claims (Counts I and II of the intervenor Complaint), and seeks the damages requested in the intervenor Complaint. The Court will address each claim in turn.

#### A. MOTIONS FOR SUMMARY JUDGMENT ON LIABILITY FOR FALSE CLAIMS

##### a. RELEVANT LEGAL BACKGROUND

###### i. THE FCA AND MEDICARE

This case arises under the *qui tam* provisions of the FCA, permitting a private person to "bring a civil action for a violation of [S]ection 3729 . . . in the name of the Government." 31 U.S.C. § 3730(b). Plaintiffs assert claims under two provisions of the FCA: § 3729(a)(1)(A), "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval"; and § 3729(a)(1)(B), "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(A)-(B).

Medicare Part B covers the costs of physician services, tests, and supplies, but will only

5

cover such costs where the tests are "reasonable and necessary" to treat or diagnose an injury or illness, or to improve the functioning of a malformed body part. 42 U.S.C. § 1395y(a)(1)(A); 42 C.F.R. § 411.15. To be "reasonable and necessary," diagnostic tests must be performed under adequate supervision, whether personal, direct, or general. Most unsupervised tests that the Government has listed in its intervenor Complaint require general supervision:

> the procedure is furnished under the physician's overall direction and control, but the physician's presence is not required during the performance of the procedure. Under general supervision, the training of the nonphysician personnel who actually perform the diagnostic procedure and the maintenance of the necessary equipment and supplies are the continuing responsibility of the physician.

42 C.F.R. 410.32(b)(3)(i).

### ii.  False Claims

False claims can be factually or legally false under the FCA. "A claim is factually false when the claimant misrepresents what goods or services that it provided to the Government and a claim is legally false when the claimant knowingly falsely certifies that it has complied with a statute or regulation the compliance with which is a condition for Government payment." *United States ex rel Wilkins v. United Health Care Grp., Inc.*, 659 F.3d 295, 305 (3d Cir. 2011) (citations omitted).

Plaintiffs only allege legally false claims in this action, as Plaintiffs do not allege that Defendants failed to deliver the services for which they sought reimbursement from Medicare. Legally false claims occur either when a claimant (1) certifies falsely that it has complied with payment prerequisites (an "express false certification"), or (2) seeks payment without disclosing that it has violated payment prerequisites, while acting as if it has complied (an "implied false certification"). *Id.* at 305-06. Prerequisites for payment may be based on regulatory requirements, contractual terms, or statutes. *See, e.g.*, *United States ex rel Quinn v. Omnicare*

*Inc.*, 382 F.3d 432, 441 (3d Cir. 2004).

### iii. Collateral Estoppel

In addition, the FCA specifically addresses the application of collateral estoppel to cases such as this one, where the defendants have testified in a related criminal action:

> Notwithstanding any other provision of law, the Federal Rules of Criminal Procedure, or the Federal Rules of Evidence, a final judgment rendered in favor of the United States in any criminal proceeding charging fraud or false statements, whether upon a verdict after trial or upon a plea of guilty or nolo contendere, shall estop the defendant from denying the essential elements of the offense in any action which involves the same transaction as in the criminal proceeding and which is brought under subsection (a) or (b) of section 3730.

31 U.S.C. § 3731(e) (2012). In addition, under the common law doctrine of collateral estoppel, a defendant may not contest an issue in a civil suit that has been resolved in the Government's favor in a criminal prosecution, whether the defendant pled guilty or was convicted after a trail. *United States v. Killough*, 848 F.2d 1523, 1528 (11th Cir. 1988) (citation omitted).

### iv. Sham Affidavits

Finally, the Government asserts that the Patels have attempted to create genuine issues of material fact with respect to liability through the use of affidavits filed for the purpose of defeating summary judgment. When a party's affidavit conflicts with prior testimony, the district court may disregard the affidavit so as to prevent the party from "creat[ing] a material issue of fact to defeat summary judgment by filing an affidavit disputing his or her own sworn testimony without demonstrating a plausible explanation for the conflict." *Baer v. Chase*, 392 F.3d 609, 625 (3d Cir. 2004) (citation omitted); *see also EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 269-70 (3d Cir. 2010); *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007). In deciding whether to strike a "sham affidavit," district courts may consider the timing of the affidavit, whether there is a plausible explanation for the contradiction, and whether there

is independent record evidence to support the affidavit.  *See EBC, Inc.*, 618 F.3d at 268-69.

**b. ANALYSIS**

As a threshold matter, this civil *qui tam* action arises from the same set of transactions that underlie the Patels' guilty pleas in their criminal cases.  More specifically, the Patels pled guilty to defrauding Medicare in several ways: by creating fake medical reports in conjunction with diagnostic tests; by forging specialist physician signatures on reports that accompanied diagnostic tests; and by sending these faked reports to physicians who had ordered the tests from the Patels' companies, Biosound Medical Services and Heart Solution PC.  Therefore, the Patels are estopped from denying the essential elements of offenses in this civil action that involve the same transactions in the informations to which the Patels pled guilty.

Plaintiffs assert that Defendants have violated § 3729(a)(1)(A) (submitting false claims), and § 3729(a)(1)(B) (using false records or statements), both based on (1) the creation of fraudulent diagnostic test reports and tests and (2) the submission of claims for unsupervised diagnostic tests.  The Court will review each alleged violation below.

**i. Submitting False Claims under § 3729(a)(1)(A)**

To prove a violation of § 3729(a)(1)(A), Plaintiffs must show that "(1) the defendant presented or caused to be presented to an agent of the United States a claim for payment; (2) the claim was false or fraudulent; and (3) the defendant knew the claim was false or fraudulent." *Wilkins*, 659 F.3d at 305 (internal quotation marks and citation omitted).  Plaintiffs allege that Defendants submitted false claims for both (1) fraudulent diagnostic test reports and tests and (2) unsupervised diagnostic tests.

Given that Defendants are estopped from denying the essential elements of the offenses since they have pled guilty in a criminal action involving the same transactions, Plaintiffs assert

that Defendants have admitted to the elements of a § 3729(a)(1)(A) violation with respect to their submission of false claims for fraudulent diagnostic test reports and tests in their plea allocutions. The Government's argument is as follows. The Patels admitted that their companies, Biosound Medical Services and Heart Solution P.C., submitted claims to Medicare for diagnostic testing services the Patels claimed they provided. These claims were false or fraudulent, because the Patels forged the test reports and physician signatures that accompanied the diagnostic results—in effect, they claimed they had provided services that they did not actually provide. The Patels have admitted, on the record, that they knew their claims were fraudulent and that they knew their conduct was illegal at the time they submitted false claims.

Plaintiffs also assert that they have met their burden to show that Defendants committed violations of § 3729(a)(1)(A) with respect to their submission of false claims for unsupervised neurological tests. The Patels admitted that they submitted claims to Medicare for neurological diagnostic testing based on tests performed at Biosound Medical Services. Furthermore, the Patels falsely represented and implicitly certified to Medicare that they had complied with a condition for payment of claims (the requirement of supervision), but did not actually do so. Therefore, the Patels have admitted that they falsely represented to Medicare that the neurological testing conducted at Biosound was supervised by a licensed neurologist, when in fact it was not. Finally, the Patels have admitted that they knew that the claims they had submitted were false or fraudulent, and that this conduct was illegal.

Kirtish Patel seeks to create a genuine issue of material fact by stating in his certification that he employed Dr. Brad Tinkelman as a supervising neurologist at Biosound Medical Services from 2006 to 2007, and furthermore that Dr. Fawaz Mian served as Biosound's neurological testing supervisor from 2012 to 2014. (K. Patel Cert. at ¶¶ 4-8.) Both Kirtish and Nita Patel's

9

plea allocutions conflict with this assertion, as both admitted that between 2006 and 2014, they "falsely represent[ed] to Medicare that the neurological testing being performed at Biosound Medical Services was being supervised by a licensed neurologist, when, in fact, it was not?" (K. Patel Tr. at 34:18-22; N. Patel Tr. at 24:14-22.)  Defendants assert that the plea colloquy was not sufficiently specific on whether all neurological testing conducted at Biosound was not supervised by a licensed neurologist, and furthermore that Judge Walls did not specify the level of supervision that Defendants failed to provide at Biosound during the time period in question.  Despite the Patels' arguments to the contrary, there is nothing ambiguous about the question posed by Judge Walls.  Defendants have not explained why they did not assert at the plea allocutions that some testing at Biosound had been conducted under the supervision of a licensed neurologist, at the proper level of supervision, if in fact this was the case.  Seeing as Kirtish Patel's certification on this issue is self-serving and as the Patels did not offer a reasonable explanation for the contradiction in facts, the Court will strike the portions of Kirtish Patel's certification addressing these issues.

Furthermore, Nita Patel claims that she should not be held liable for any unsupervised testing that occurred at Biosound Medical Services, because she did not own or operate the company and therefore she did not "present[] or cause to be presented" any of the claims for neurological testing completed at Biosound. (N. Patel Opp. at 2, 3, 6.)  Her affidavit on this point [Docket Entry 45-1] directly contradicts her sworn testimony that she was an owner and operator of Biosound Medical Services from 2006 to 2014, and that she and her husband knowingly falsely represent[ed] to Medicare that the neurological testing being performed at Biosound Medical Services was being supervised by a licensed neurologist. (N. Patel Tr. at 22:12-17; 24:18-26.)  Again, Judge Walls' questioning on the issue of ownership of Biosound

10

and the false representations made to Medicare was clear. Nita Patel had the opportunity to explain that she did not own Biosound during her plea allocution. Her briefing fails to explain the conflict between her testimony and her submissions to this Court in any reasonable way, and the Court cannot justify ignoring the admissions made in the plea allocution based on this self-serving affidavit and briefing. Therefore, the Court will strike the portions of Nita Patel's affidavit that address her ownership and operation of Biosound, as well as her filing of false claims with Medicare based on her operation of Biosound.

### ii. Using False Records or Statements under § 3729(a)(1)(B)

To establish liability under § 3729(a)(1)(B), Plaintiffs must prove that the Defendants (1) made, used, or caused to be made or used, a false record or statement; (2) the Defendants knew the statement to be false; and (3) the statement was material to a false or fraudulent claim. *United States ex rel Zwirn v. ADT Sec. Servs., Inc.*, No. 10-2639, 2014 WL 2932846, at *5 (D.N.J. June 30, 3014) (citing *Hooper v. Lockheed Martin Corp.*, 688 F.3d 1037, 1048 (9th Cir. 2012)). Plaintiffs allege that Defendants used false records or statements to obtain payment for their false claims for both (1) fraudulent diagnostic test reports and tests and (2) unsupervised diagnostic tests.

Plaintiffs argue that they have met their burden to show that Defendants committed violations of § 3729(a)(1)(B), with respect to their use of false records or statements to obtain payment for false claims for fraudulent diagnostic test reports and tests. Plaintiffs argue as follows. For Medicare to pay a claim for the interpretation of a diagnostic procedure, a written report must be drafted. The Patels have admitted that they created false records—Defendant Kirtish Patel wrote false diagnostic test reports, and the Patels both added fake physician signatures to the reports. The Patels knew these records were false. Furthermore, these false test

11

reports satisfy the requirement of being "material" to the Defendants' false Medicare claims. The FCA defines "material" as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4). Even though Medicare may not have reviewed the fraudulent test reports the Patels created, the reports were necessary to make the false claims appear legitimate, given the requirement of a written report for these claims.

Finally, Plaintiffs assert that they have met their burden to show that Defendants committed violations of § 3729(a)(1)(B) with respect to their submission of false claims for unsupervised neurological tests. The Patels admitted that they knowingly and falsely represented that, from 2006-2014, neurological testing performed at Biosound Medical Services was supervised by a licensed neurologist. These representations were material to their false claims, since supervision of diagnostic testing is a condition that must be satisfied before Medicare will pay claims. *See* 42 C.F.R. § 410.32(b)(1).

So far as the Patels argue that Nita Patel should not be liable under § 3729(a)(1)(B) for fraudulent activities that occurred at Biosound, and furthermore that the Patels should not be liable for some of the fraudulent claims submitted by Biosound, the Court rejects these arguments for the reasons explained above.

Based on the analysis above, the Court finds that no genuine issue of material fact exists with respect to Counts I or II of the Government's intervenor Complaint. The certifications submitted by Defendants do not defeat these summary judgment motions, because Defendants have not offered reasonable explanations for why the facts in the certifications differ from those admitted in the plea allocutions. For these reasons, the Court will enter judgment in favor of Plaintiffs on these claims.

### B. DAMAGES

Plaintiffs also ask the Court to grant statutory and civil penalty damages, based on Defendants' violation of various provisions of the FCA. For their actual damages, Plaintiffs have requested $5,006,864.85 (three times the $1,668,954.95 that Defendants admitted Medicare paid them for their fraudulent acts in their plea allocutions). (K. Patel Tr. at 35:11-36:17; N. Patel Tr. at 25:2-16.) Furthermore, Plaintiffs claim that Defendants are also liable for civil penalties of $2,750,000, given that Defendants made at least 500 fraudulent claims to Medicare, and should be penalized at least $5,500 per fraudulent claim, pursuant to 31 U.S.C. § 3729(a)(1).

On the issue of damages, § 3729(a)(1) states that:

> any person who knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or] knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim . . . is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000 . . . plus 3 times the amount of damages which the Government sustains because of the act of that person.

*Id.* The civil penalty is mandatory. *See, e.g.*, *United States ex rel Drakeford v. Tuomey*, 792 F.3d 364, 388 (4th Cir. 2015) (citation omitted) ("Congress provided for treble damages and an automatic civil monetary penalty per false claim).

Defendants request that the Court reduce the damages Plaintiffs seek for several reasons. First, Defendants attack the number of false claims at issue in this action. To the extent that the Patels seek to reduce damages based on the statements in Kirtish Patel's certification that Biosound employed a supervising neurologist for part of the time period in question (2006-2014) and that some of the tests were in fact supervised, the Court will not grant this request. The Court has struck the portions of Kirtish Patel's certification addressing these issues, for the reasons stated above, and Defendants have offered no other support for the requested reduction

of fees on this issue. The Patels admitted in their pleas that neurological testing at Biosound was not supervised for the time period at issue, and are estopped from denying these admissions. Moreover, the Patels admitted in their pleas that Medicare paid them $1,668,954.95 due to their fraudulent acts, so any dispute as to the number of false claims is moot.

In addition, Defendants assert that damages from false claims based on fraudulent diagnostic reports ($487,244.95) should be reduced by 60 percent. The Patels argue that their tests had some value despite the forged reports accompanying the test results, because the Patels completed the technical component of the test, and thus a physician who had ordered the test could have, theoretically, examined the test results themselves. Defendants support this statement with Kirtish Patel's certification, which asserts that 60 percent of the value of a claim came from the performance test itself (the "technical component" of the test), and 40 percent of the value of a claim arose from the specialist physician interpretation of the claim (the "professional component" of the test). (K. Patel Cert. ¶ 10.) Defendants offer no evidence to show that any physician, in fact, interpreted the diagnostic test themselves. And furthermore, Medicare requires that the services for which it reimburses must be medically "reasonable and necessary," which requires adequate supervision. 42 U.S.C. § 1395y(a)(1)(A). Medicare is not required to reimburse for tests simply because they may have some "value." Medicare requires that the "interpretation of a diagnostic procedure includes a written report." Medicare Claims Processing Manual Ch. 13 at 20.1 (Professional Component). The Patels have admitted that they performed the diagnostic tests, and that they are liable for creating forged test reports. Specifically, Defendants represented to Medicare that they had provided a service that they, in fact, did not provide. Therefore, the forged test reports render the claims worthless under Medicare's requirements. For these reasons, the Court will not reduce the damages based on this theory of

apportionment of the claim's value.

Finally, based on the affidavits submitted with their oppositions, the Patels also assert that Defendants should not be required to reimburse the funds they received from Medicare that they subsequently paid in taxes to the Government. The Patels offer no case cites for the proposition that the taxes they paid on the money paid by Medicare for their false claims should be subtracted from the amount they owe to the Government, or indeed that any court has offset damages to a government program like Medicare based on tax payments to the general treasury.

The Patels have admitted the exact amount of damages that their FCA violations caused. Their arguments related to facts asserted in the Patels' certifications are without merit. Since Defendants are estopped from denying the facts in their plea allocutions related to damages, the Court will grant summary judgment in favor of Plaintiffs for all requested damages.

### IV.  CONCLUSION

For the foregoing reasons, the Court will grant Plaintiffs' motions. An appropriate Order will be filed herewith.

      s/ Stanley R. Chesler
    STANLEY R. CHESLER
   United States District Judge

Dated:  July 8, 2016

15