<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel* JANE DOE,<br><br>　　　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>HEART SOLUTION PC, BIOSOUND MEDICAL SERVICES, KIRTISH N. PATEL, NITA K. PATEL,<br><br>　　　　　　　　　　Defendants. | **Civil Action No. 14-3644 (SRC)(CLW)**<br><br>**OPINION** |

<u>**CHESLER**</u>, District Judge

　　This matter comes before the Court upon Plaintiff United States of America's ("the Government") motion for partial summary judgment on common law claims in Count III, IV, V, and VI of its intervenor Complaint [Docket Entry 62]. Defendants Heart Solution P.C., Nita K. Patel, Biosound Medical Services, and Kirtish N. Patel (collectively, "Defendants") have opposed the motion [Docket Entries 68 & 69]. The Court has considered the parties' submissions and proceeds to rule without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court will grant the Government's motion.

　　**I.　BACKGROUND**

　　On November 17, 2015, Defendants Kirtish and Nita Patel separately pled guilty to committing health care fraud in violation of 18 U.S.C. § 1347. As part of their guilty pleas, Kirtish and Nita Patel admitted that they both owned and operated Biosound Medical Services and Heart Solution P.C. from 2006 to 2014. (K. Patel Tr. at 32:1-5; N. Patel Tr. at 22:12-17).

1

They admitted that at their companies, they committed two general schemes defrauding Medicare.

First, they billed Medicare for fraudulent diagnostic test reports. (K. Patel Tr. at 32:10-23; N. Patel Tr. at 22:20-23:1). Both Patels admitted that they claimed that licensed specialist physicians had reviewed and interpreted the diagnostic tests, when they had not. (K. Patel Tr. at 32:18-23; N. Patel Tr. at 23:2-7). The Patels admitted that instead, Kirtish Patel wrote many of the diagnostic reports that were supposed to have been written by a specialist physician, despite the fact that Kirtish Patel did not have a medical license. (K. Patel Tr. at 33:5-9, 33:14-22; N. Patel Tr. at 23:14-19). The Patels further admitted that both Kirtish Patel and Nita Patel attached forged specialist physician signatures to reports. (K. Patel Tr. at 33:23-34:4; N. Patel Tr. at 23:20-25). Medicare paid $487,244.95 for these diagnostic tests. (United States Rule 56.1 Statement ¶ 11 [hereinafter PSF]).

Second, the Patels admitted that from 2006 to 2014, they represented to Medicare that the neurological testing performed at Biosound Medical Services was supervised by a licensed neurologist, when in fact it was not. (K. Patel Tr. at 34:4; N. Patel Tr. at 23:8-13). Medicare paid $1,181,710 for this neurological diagnostic testing. (PSF ¶ 11).

The Patels acknowledged that they knew that submission of these false claims to Medicare was illegal. (K. Patel Tr. at 36:21-37:2; N. Patel Tr. at 25:17-20). They also admitted that in total, Medicare paid Biosound Medical Services and Heart Solution P.C. at least $1,668,954.95 for claims submitted. (K. Patel Tr. at 35:11-36:17; N. Patel Tr. at 25:2-16).

Relator filed the original Complaint in this civil action against Defendants on June 6, 2014 [Docket Entry 1]. The Government filed a notice of election to intervene on November 18, 2015 [Docket Entry 9], along with an intervenor Complaint [Docket Entry 10]. This Court has

granted two previous motions for summary judgment, one filed by Relator and one by the Government [Docket Entries 30 & 34].  The Government now files another partial motion for summary judgment on its common law claims.

## II. LEGAL STANDARD

### a. SUMMARY JUDGMENT

Summary judgment is appropriate under Fed. R. Civ. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"  *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

"When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party."  *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1438 (11th Cir. 1991)). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district

3

court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); *see also* Fed. R. Civ. P. 56(e) (requiring the nonmoving party to "set out specific facts showing a genuine issue for trial"). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." *Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001).

If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23).

b. **COLLATERAL ESTOPPEL**

Under the common law doctrine of collateral estoppel, a defendant may not contest an issue in a civil suit that has been resolved in the Government's favor in a criminal prosecution, whether the defendant pled guilty or was convicted after a trail. *United States v. Killough*, 848

4

F.2d 1523, 1528 (11th Cir. 1988) (citation omitted). Here, this civil *qui tam* action arises from the same set of transactions that underlie the Patels' guilty pleas in their criminal cases. Therefore, the Patels are estopped from denying the essential elements of offenses in this civil action that involve the same transactions in the informations to which the Patels pled guilty.

### III. DISCUSSION

The Government moves for partial summary judgment on Counts III, IV, V, and VI, and seeks the damages requested in the intervenor Complaint. The Court will address each claim in turn.

#### a. COMMON LAW FRAUD

First, the Government moves for partial summary judgment on Count III, common law fraud. A plaintiff must allege five elements to recover from common law fraud: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Williams v. BASF Catalysts LLC*, 765 F.3d 306, 317 (3d Cir. 2014) (citing *Banco Popular N. Am. v. Gandi,* 184 N.J. 161, 172-73 (2005) (quotation marks omitted). A fact is material if a reasonable person would attach importance to it in determining his or her choice of action in the transaction, or if the maker of the representation knew or had reason to know that the recipient of the representation regards the matter as important in determining his or her choice of action, even if a reasonable person would not. *Universal Health Servs., Inc. v. United States*, 136 S. Ct. 1989, 2002–03 (2016) (internal citation omitted); *Voilas v. Gen. Motors Corp.*, 170 F.3d 367, 376 (3d Cir. 1999). A plaintiff's reliance is reasonable if it was "acting justifiably or reasonably in giving credence to the alleged misrepresentation" – that is, if it relied on a representation that was "worthy of belief." *Voilas*,

170 F.3d at 377.

  The Patels admitted at their guilty pleas to conduct that makes them liable for common law fraud. First, they admitted to making misrepresentations. In their guilty pleas, they admitted that they forged doctors' signatures on fraudulent diagnostic test reports and billed Medicare for the reports and the underlying tests. The Patels admitted that they lied that a licensed physician reviewed and interpreted the diagnostic data recorded by technicians who administered the testing. Additionally, the Patels admitted that they billed Medicare for neurological tests performed at Biosound Medical Services from 2006 to 2014 and they falsely reported that these tests were supervised by a licensed physician. These misrepresentations were material because Medicare attached importance to the Patels' claims that a physician was reviewing, interpreting, and supervising the tests, and Medicare would not have paid the Patels for their testing had it known the truth. *See* 42 C.F.R. § 410.32(b) (stating that diagnostic testing services "furnished without the required level of supervision not reasonable and necessary" and thus are not covered by Medicare).[1]

  Additionally, as to the other elements of common law fraud, the Patels admitted at their guilty plea that they knew their representations were false and that billing Medicare for the reports was illegal. They intended for Medicare to rely on their representations so that Medicare would pay them for their fraudulent testing. The Government established the fourth element – that it reasonably relied on the Patels' material misrepresentations – because the Patels identified supervising physicians and certified that they were abiding by Medicare program rules. *See* 42 C.F.R. § 424.510(d)(3) (requiring a signature on an enrollment application attesting "that the

---

[1] The Patels operated an Independent Diagnostic Testing Facility for Medicare Part B purposes. Under 42 C.F.R. § 410.33(b), they were thus required to have a supervising physician. Moreover, the Defendants billed Medicare for diagnostic testing that required at least a general level of supervision under 42 C.F.R. § 410.32(b)(3)(i).

provider or supplier is aware of, and abides by, all applicable statutes, regulations, and program instructions."). Thus, the Patels' representations were worthy of belief. Finally, the Patels admitted in their guilty pleas that Medicare paid the Patels at least $1,668,954.95 for fraudulent diagnostic testing, reports, and unsupervised neurological diagnostic testing. Since the Patels have already pled guilty to conduct that shows that they committed common law fraud, there are no genuine issues of material fact remaining. Thus, the Court grants the Government's motion for summary judgment on the common law fraud claim.

### b. UNJUST ENRICHMENT

Next, the Government moves for summary judgment on its unjust enrichment claim. "To establish unjust enrichment, a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust." *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (1994). Here, the Patels admitted in their guilty pleas that they were paid at least $1,668,954.95 by Medicare for their fraudulent diagnostic and neurological testing. The retention of this $1,668,954.95 would be inequitable because it was obtained through their crimes. Based on their guilty pleas, there are no disputed genuine issues of material fact that they received a benefit after fraudulently billing Medicare. This Court therefore grants the Government's motion for summary judgment on the unjust enrichment claim.

### c. DISGORGEMENT OF PROFITS

Similarly, the Government moves for summary judgment on Count V, its disgorgement of profits claim. A court can order a defendant to divest itself of the benefits of illegal activity through disgorgement of profits. *Commodity Futures Trading Comm'n v. American Metals Exchange Corp.*, 991 F.2d 71, 76 (3d Cir. 1993). Here, the Patels admitted that they retained $1,668,954.95 in gains from Medicare due to their illegal activity. Because they admitted this in

their guilty pleas, there are no contested genuine issues of material fact.  Thus, the Court grants the Government's motion for summary judgment on disgorgement of profits.

### d. PAYMENT BY MISTAKE OF FACT

The Government finally moves for summary judgment on Count VI, payment by mistake of fact.  Payment by mistake of fact permits the Government to recover funds that "its agents have wrongfully, erroneously, or illegally paid." *United States v. Albinson*, No. CIV. 09-1791, 2010 WL 3258266, at *18 (D.N.J. Aug. 16, 2010) (citing United States v. Wurts, 303 U.S. 414, 415 (1938)).  "[I]f the Government made payments based on an erroneous belief that was material to the decision to pay, it is entitled to recover the payments." Id. at *19 (internal citation omitted).  Here, the Government paid the Patels under the erroneous belief that a physician had been reviewing and interpreting diagnostic data, and supervising neurological tests.  The Government was under this erroneous belief because of the Patels' submissions to Medicare and their certification that they were abiding by Medicare regulations.  The Patels admitted to illegally billing Medicare in their guilty pleas.  Because these misrepresentations were material to Medicare's decision to pay the Patels, the Government can recover.  Thus, the Court grants the Government's motion for summary judgment on payment by mistake of fact.

### e. KIRTISH PATEL'S ARGUMENT ON LIABILITY

Kirtish Patel seeks to create a genuine issue of material fact by stating in his certification that he employed Dr. Brad Tinkelman and Dr. Fawaz Mian as supervising neurologists from 2006 to 2007 and 2012 to 2014, respectively.  As this Court has previously explained, both Kirtish and Nita Patel's plea allocutions conflict with this assertion, as both admitted that between 2006 and 2014, they "falsely represent[ed] to Medicare that the neurological testing being performed at Biosound Medical Services was being supervised by a licensed neurologist,

8

when, in fact, it was not". (K. Patel Tr. at 34:18-22; N. Patel Tr. at 24:14-22). Defendants repeat their assertions that the plea colloquy was not sufficiently specific. But, Defendants have not explained why they did not assert at the plea allocutions that some testing at Biosound had been conducted under the supervision of a licensed neurologist, at the proper level of supervision, if in fact this was the case. The Court has already struck the portions of Kirtish Patel's certification addressing these issues as self-serving. Given the Patels' admissions at their guilty pleas, the Court does not find genuine issues of material fact here.

### f. NITA PATEL'S ARGUMENT ON LIABILITY

Nita Patel claims that she should not be held liable for unsupervised testing that occurred at Biosound Medical Services, because she did not own or operate the company. This Court has already rejected this argument, which Nita Patel also made in response to the previous motions for summary judgment. This argument contradicts her sworn testimony during her plea allocution that she was an owner and operator of Biosound Medical Services from 2006 to 2014, and that she and her husband knowingly falsely represented to Medicare that the neurological testing being performed at Biosound Medical Services was being supervised by a licensed neurologist. (N. Patel Tr. at 22:12-17; 24:18-26). As this Court previously noted, Judge Walls' questioning on the issue of ownership of Biosound and the false representations made to Medicare was clear. Nita Patel had the opportunity to explain that she did not own Biosound during her plea allocution. The Court cannot justify ignoring the admissions made in the plea allocution based on this self-serving briefing. This Court already struck the portions of Nita Patel's affidavit that address her ownership and operation of Biosound. Because Nita Patel is estopped from denying that she owned and operated Biosound from 2006 to 2014 and that she made false representations to Medicare about neurological testing being supervised at Biosound,

9

this Court grants the Government's motion for summary judgment as to the liability of Nita Patel.

### g. DAMAGES

The Government finally asks the Court to grant summary judgment on damages for common law fraud, unjust enrichment, disgorgement of profits, and payment by mistake. The Government requests that the Patels be ordered to pay $1,668,954.95, the amount that the Patels admitted Medicare had paid to them for their fraudulent testing.[2]

Defendants repeat the arguments they made in response to the last round of motions for summary judgment and request that the Court reduce the damages for several reasons. First, Defendants assert that damages from false claims based on fraudulent diagnostic reports should be reduced by 60 percent. The Patels argue that their tests had some value despite the forged reports accompanying the test results, because the Patels completed the technical component of the test, and thus a physician who had ordered the test could have, theoretically, examined the test results themselves. They suggest that the Government must produce a billing code expert to determine the damages. As this Court concluded in its last summary judgment Opinion, Defendants offer no evidence to show that any physician, in fact, interpreted the diagnostic test themselves. And furthermore, as this Court has previously stated, Medicare requires that the services for which it reimburses must be medically "reasonable and necessary," which requires adequate supervision. 42 U.S.C. § 1395y(a)(1)(A). Medicare is not required to reimburse for tests simply because they may have some "value." Medicare requires that the "interpretation of a diagnostic procedure includes a written report." Medicare Claims Processing Manual Ch. 13 at

---

[2] The Court previously granted judgment in the sum of $7,756,864.85 in favor of the United States against the Defendants [Docket No. 47]. The government requests that the liability runs concurrent, meaning that the Defendants' liability in this matter should not exceed $7,756,864.85.

20.1 (Professional Component). The Patels have admitted that they performed the diagnostic tests, and that they are liable for creating forged test reports. Specifically, Defendants represented to Medicare that they had provided a service that they, in fact, did not provide. Therefore, the forged test reports render the claims worthless under Medicare's requirements. For these reasons, the Court will not reduce the damages based on this theory of apportionment of the claim's value.

In addition, Defendants attack the number of false claims at issue in this action. The Court has also already addressed this argument in its last Opinion. To the extent that the Patels seek to reduce damages based on the statements in Kirtish Patel's certification that Biosound employed a supervising neurologist for part of the time period in question and that some of the tests were in fact supervised, the Court will not grant this request. The Court has struck the portions of Kirtish Patel's certification addressing these issues, for the reasons stated above, and Defendants have offered no other support for the requested reduction of fees on this issue. The Patels admitted in their pleas that neurological testing at Biosound was not supervised for the time period at issue, and are estopped from denying these admissions. Defendants next argue that Kirtish Patel wrote "many" of the diagnostic reports, but not all of them, and that damages should be reduced accordingly. This argument is not persuasive because the Patels admitted in their pleas that Medicare paid them $1,668,954.95 due to their fraudulent acts, so any dispute as to the number of false claims is moot.

Finally, based on the affidavits submitted with their oppositions, the Patels also assert that Defendants should not be required to reimburse the funds they received from Medicare that they subsequently paid in taxes to the Government. The Patels offer no case cites for the proposition that the taxes they paid on the money paid by Medicare for their false claims should

11

be subtracted from the amount they owe to the Government, or indeed that any court has offset damages to a government program like Medicare based on tax payments to the general treasury.

The Patels have admitted the exact amount that Medicare paid them for their fraudulent testing. Since Defendants are estopped from denying the facts in their plea allocutions related to damages, the Court will grant summary judgment in favor of the Government for $1,668,954.95 in damages.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant the Government's motion. An appropriate Order will be filed herewith.

                                                                              s/ Stanley R. Chesler
                                                                               STANLEY R. CHESLER
                                                                         United States District Judge

Dated: April 3, 2017